## DEAN v. MAYO et al.

### No. 604.

District Court, W. D. Louisiana, Lake Charles Division.

Aug. 11, 1934.

New Trial Denied Sept. 6, 1934.

Prowell, McBride & Ray, of New Orleans, La., and Vance Planche, of Lake Charles, La., for complainant.

Lewis & Williamson, of Lake Charles, La., for respondents.

DAWKINS, District Judge.

The complainant, a citizen of the state of Louisiana, alleging himself to be the owner and operator of the Red River Barge Line, between the states of Louisiana and Texas, brought this suit against Walter R. Mayo,

Frank Graham, Arthur McCurtis, W. M. Stewart, citizens of this state, International Longshoremen's Association, Local No. 1214 of the International Longshoremen's Association, and Local No. 1180 of the International Longshoremen's Association, as well as all other persons, whose names were unknown to complainant, "who have combined and confederated with the said above defendants in the doings and acts hereinafter set forth," invoking the provisions of the Sherman Anti-Trust Law (Act July 2, 1890 [15 USCA §§ 1–7, 15 note]). The bill further alleged that Mayo and Graham were president and secretary, respectively, of Local No. 1214 of the said Association, and McCurtis and Stewart were president and secretary, respectively, of Local No. 1180; that complainant's said barge line carries freight between ports in the states of Louisiana and Texas, and at the time of the commission of the acts complained of was engaged in loading and unloading at Lake Charles, in this district, shipments to and from other points in the state of Texas; that respondents are persons who hire their services as longshoremen at Lake Charles and other ports on the route of said barge line; that one of the purposes of said Association and its members is to bargain collectively with persons hiring such labor; and another purpose is "to discourage those engaged in businesses, such as are carried on by complainant, from hiring longshore labor other than the members of the International Longshoremen's Association and its Locals"; that defendants are displeased at complainants "action in hiring unorganized labor for loading and unloading the cargoes of complainant's barges, and have passed resolutions and regulations demanding that complainant hire no longshore labor unless the persons furnishing said labor be members of the said Association and of the above named Locals thereof"; that from about May 1, 1934, complainant and the officers and employees of his fleet have been "warned repeatedly by persons acting for said respondents, that complainant would have to have his work done by members of said Association or they would commit acts of reprisal against the complainant and his shipping business"; that complainant refused to heed such warnings and respondents have "carried out their threats and have committed and countenanced acts which have greatly injured complainant's business and complainant fears and has good reason for so fearing, that said unlawful acts will be continued"; that the said officers of said local unions have instructed their members to "harass and damage complainant, to stop complainant's employment of unorganized labor, to intimidate complainant's employees, to use physical force and do bodily injury against and to complainant's employees, to stop the loading and unloading of complainant's barges and to heap verbal abuses and threats upon complainant's employees, * * *" which was done "with the idea in view of forcing complainant to employ members of said Association"; that the said members of said Association "congregate upon the wharves where complainant's barges land for the purpose of loading and unloading" for the purpose of making threats of bodily harm against complainant's employees, by cursing and abusing said employees and threatening to attack them physically; that said acts were and are being committed and will continue so long as barges of complainant are engaged in loading and unloading cargo in the Port of Lake Charles, "all of which constitute interstate shipments"; and that the officers of said Association have instructed and directed their members "to intimidate by threats shippers who use complainant's vessels for the shipment of merchandise."

Complainant further alleges specifically as follows:

"22. Complainant avers particularly that on July 12, 1934, a large number of persons complained of, congregated near one of complainant's barges and threatened with death Walter A. Stevens, an officer of complainant's fleet, and the members of the crew of one of complainant's barges, in the event the barges of complainant were loaded or unloaded with organized labor.

"23. That the wharves whereat complainant's barges land in the Port of Lake Charles are privately owned property, and complainant in the furtherance of his business leases the right to use said wharves, and the persons complained of have no right to go upon the said wharves, and are trespassers thereon.

"24. That the above mentioned acts against complainant by the persons complained of, result from a conspiracy existing between the International Longshoremen's Association, its above named locals, and the above named officers thereof, the members of said Association whose names are unknown to petitioner, and other persons acting with them in concert whose names are also unknown to complainant, to destroy complainant's business unless complainant complies with the demands of the defendants that members of the said Association be employed by complainant to do his longshore work.

"25. That the said conspiracy has succeeded in a large measure, as complainant due to the continuance of the above mentioned acts, finds it almost impossible to employ longshore labor; that shippers have discontinued shipping cargo on complainant's barges as a result thereof; that complainant cannot operate his barge on schedule time due to the fact that he has difficulty in employing longshore labor; that longshore laborers have quit their jobs as a result of the above unlawful acts; that longshore labor refuses to work for complainant, fearing bodily harm from the defendants and persons acting in concert and in confederation with them; that complainant's barges in the port of Lake Charles have been delayed as much as ten days as a result of the above mentioned acts of the parties complained of.

"26. That this is a civil cause arising under the Constitution and laws of the United States, and the amount and value in controversy exceeds Three Thousand ($3,000.00) Dollars; that complainant has lost more than the said sum by way of injury to his business as a result of the unlawful acts complained of; that if the acts complained of are continued complainant's business will be ruined; that complainant has an investment of more than $60,000.00 in said Red River Barge Line.

"27. That as the acts complained of are interfering with and damaging interstate commerce, being in contravention of the laws of the United States, particularly sections 1 and 2 of the Act of Congress adopted July 2, 1890, 26 Stat. 209, 15 USCA 1 et seq., commonly known as the Sherman Anti-Trust Act amendatory thereto, this Honorable Court has jurisdiction of the subject matter of this cause.

"28. That the defendants and those acting in concert with them, have entered into a conspiracy to restrain and monopolize the interstate commerce business carried on by complainant, in violation of the laws of the United States, and they have during the course of that conspiracy, and for the purpose of consummating it, greatly damaged complainant's business and property, and if the said conspiracy fully consummates, complainant's business will be totally destroyed.

"29. That complainant prays leave to amend this complaint by making other defendants parties thereto, if and when their names are ascertained.

"30. That the questions involved in this cause are of common and general interest to defendants and those other persons who are conspiring, combining and confederating with them, and to all persons doing the acts complained of herein, and together they constitute a class so numerous as to make it impracticable to bring them all before the Court, and the named defendants are competent to defend all.

"31. That complainant since May 1, 1934, has suffered, and is now suffering, and will continue to suffer irreparable injury from and as a result of the acts hereinabove complained of, aggregating many thousands of dollars, which irreparable injury will continue to increase as a result of any delay in enjoining and preventing the defendants and all other persons assisting, combining, conspiring and confederating with them for the unlawful purposes aforesaid, and all other persons doing the unlawful acts herein complained of, and it is, therefore, necessary and proper that this Honorable Court do issue forthwith an order, restraining and enjoining, until the granting of a temporary injunction herein, the defendants and all other persons assisting, combining, conspiring and confederating with them, and all other persons whomsoever, from doing the unlawful acts herein complained of, in order to avoid further immediate and irreparable loss and damage.

"32. That the defendants herein, and those conspiring and confederating with them, are either insolvent or of small means, and that for this further reason complainant has no plain, adequate and complete remedy at law.

"33. That complainant has complained to the police officers in the City of Lake Charles in an endeavor to prevent the unlawful acts above complained of, but the said police officers have either been unable to stop the same, or have taken no steps to do so by reason of lack of interest in the matter."

Petitioner prayed for a writ of injunction, enjoining the defendants from committing the following acts:

"To harass complainant or any of his employees:

"To intimidate either by threat or otherwise complainant or any of his employees or persons whom complainant seeks to employ,

"To do or use physical force or bodily harm against complainant or complainant's employees,

"To stop the loading or unloading of complainant's vessels,

"To picket complainant's barges in order to intimidate, threaten, abuse or use physical force against complainant or his em-

ployees, or persons desiring to become employees of complainant,

"To endeavor to intimidate by threats and actual abuses the employees of complainant in an effort to discourage or frighten them from remaining in complainant's employ,

"To go upon the wharves whereat complainant's barges land in order to do or attempt to do any of the above things,

"To intimidate by threats or otherwise, shippers of complainant in order to discourage their consigning cargo on complainant's vessels,

"To trespass upon the private wharves of complainant in the Port of Lake Charles."

There was also a prayer for a temporary restraining order, which was not granted, but a rule to show cause why a preliminary injunction should not issue was entered and made returnable at Lake Charles on July 25, 1934. At the hearing the defendants filed a motion to dismiss, upon the following grounds:

(1 and 2) That the bill fails to state a right or cause of action, in that it does not allege compliance with the provisions of the Act of March 23, 1932 (47 Stat. 72, § 8 [29 USCA § 108]), known as the Labor Injunction Act, as a condition precedent to seeking a restraining order or injunction;

(3) That it further fails to state a cause of action under the Sherman Anti-Trust Act (Act July 2, 1890, 26 Stat. 209 [15 USCA §§ 1–7, 15 note]), because the same is inapplicable to labor disputes, under the express provisions of the Act of October 15, 1914 (38 Stat. 731, § 6 [15 USCA § 17]).

The grounds of dismissal urged in paragraphs 1 and 2 of the motion were overruled at the hearing for the reason that, in the opinion of the court at that time, the Labor Injunction Act had no application to a controversy of this kind. It was thought that the bill disclosed an issue between plaintiff (who had never employed any of the members of the defendant Association, but had at all times employed nonunion labor) and defendants as outsiders, or third persons, and hence was not a labor dispute within the meaning of that statute; the gist of the complaint being an alleged attempt on the part of defendants to compel complainant to desist from employing nonunion labor and to employ members of the defendant Association only.

As to the contention that the complaint did not disclose grounds for relief under the Sherman Law, the same was taken under advisement with the merits of the application for preliminary injunction and on the proofs submitted.

Defendants insisted that the hearing be conducted by swearing the witnesses orally so that they could be subjected to a cross-examination. This the court declined to do for the reasons above stated, i. e., the inapplicability of the Labor Injunction Act, and required that the application for preliminary injunction be submitted upon affidavits. In their brief, counsel for defendants have renewed the contention that the case is governed by the Labor Injunction Act.

■■ In passing upon the matters urged in the motion to dismiss, which was brought to its attention only at the moment of going to trial on the application for preliminary injunction, the court was compelled to form a hasty judgment, with very little opportunity for investigation, which was done at the noon recess. Upon a more careful investigation of the question, I am constrained to the conclusion that I was in error in holding the Norris-La Guardia Act had no application. This result has been influenced largely by a consideration of the opinion of Judge Tuttle of the Eastern District of Michigan, in the case of Cinderella Theatre Co. v. Sign Writers' Local Union (D. C.) 6 F. Supp. 164, in which a condition similar to that involved here was met and determined; that is, the employee was a nonunion man, satisfied with his work, and the defendants were not and had never been employees of complainant, but were endeavoring to induce the employment of a member of their own association. I can add nothing to the thorough consideration and discussion of the law which was given in that case, including the reports of the committees of Congress. It is true there was no question of interstate commerce involved, but the presence of that issue in this case cannot serve to take it without the application of the statute. Of course, if that act is controlling, then the failure of the complainant to allege a compliance with the conditions precedent, laid down in section 8 makes the bill amenable to the objections raised in grounds 1 and 2 of the motion to dismiss, stated above. In other words, it is not alleged that petitioner has made "every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration." I am not informed at this time of any specific governmental machinery for mediation, but there is no allegation of any attempt of settlement by nego-

tiation or by voluntary arbitration. In passing upon a motion of this kind, it must be assumed that the pleader has set forth every available fact in his possession to bring himself within the law, and not having alleged such a compliance, the matter must be concluded against him. The language of the statute is just as emphatic in its command that "no restraining order or injunctive relief shall be granted to any complainant who has failed to comply with" the requirements of section 8, as any other, and I conclude that the motion to dismiss must be sustained, unless the plaintiff, by amendment, can show compliance with this section.

Ordinarily, it would seem that an employer wishing to conduct his business with nonunion labor would have the right to do so, and as long as he had no dispute with his own employees, an outsider occupying no relation of employee could not provoke a "labor dispute" such as to bring into operation legislation intended to apply between employers and employees. However, both the provisions of the Labor Injunction Act and the reports of the committees of Congress indicate rather clearly that this is what has been attempted by the act in question. One not wishing to employ union labor, and having no dispute with his own employees, would have no issue to negotiate about or to submit to arbitration; but if this statute means what it says, then a labor union whose members are engaged in the same kind of work may force an issue, by resorting to any means short of fraud and violence, by demanding that members of their organization be employed; and when this is done, a Federal District Court is denied the power or jurisdiction to act until resort is had to the agencies and means directed by the law for the determination of whether the employer shall discontinue the employment of nonunion labor and employ only members of such an association. Whether or not such restrictions will be found constitutional remains to be seen. As the matter now stands, I have no alternative but to sustain the first and second grounds of the motion.

Since the complainant was not, in view of the court's ruling at the hearing, afforded an opportunity to be heard upon this issue, he will be allowed ten days in which to move for a reconsideration and to brief the point in question.

I deem it unnecessary to pass upon the other question of the applicability of the Sherman Law until the other issue has been finally disposed of.

### On Motion for New Trial.

After due consideration of the motion for a new trial in the above case, I am of the view that the same should be overruled.

The cause will not be dismissed at this time but permitted to remain upon the docket, with the right to the plaintiff to amend after he has exhausted his remedies otherwise under the statute.

Proper decree should be presented.