## DONNELLY GARMENT CO. et al. v. IN-TERNATIONAL LADIES' GARMENT WORKERS' UNION et al.

No. 2924.

District Court, W. D. Missouri, W. D.

Aug. 13, 1937.

Reed & Ingraham and Hogsett, Murray, Trippe & Depping, all of Kansas City, Mo., for plaintiffs.

Frank P. Walsh and Jerome Walsh, both of Kansas City, Mo., for defendant International Ladies' Garment Workers' Union.

Clif Langsdale and Charles V. Garnett, both of Kansas City, Mo., for various defendants.

OTIS, District Judge.

Certain of the defendants have moved to dismiss the bill and for dissolution of the restraining order which heretofore has been issued. The motion to dismiss admits for present purposes the facts alleged by plaintiffs. The statement of facts which follows is formulated from the allegations in the bill. It would be quite unfair, of course, to intimate that the moving defendants admit finally the truth of the facts alleged.

One of the plaintiffs, the Donnelly Garment Company, manufactures ladies' garments and sells its products throughout the United States. In its factory in Kansas City it gives employment to hundreds of individuals. Between them, the employees, and the Donnelly Company, the employer, there is no controversy. Between them there is no dispute of any kind touching wages, hours of labor, working conditions in the factory, or any other subject. The employees are organized. They call their organization the Donnelly Garment Workers Union. Every employee is a member of this union. This union has asked and it has received from the company full recognition as the agency of the employees for collective bargaining.

The Donnelly Garment Workers Union has no connection with a certain unincorporated association known as the International Ladies' Garment Workers' Union. That association has 250,000 members. The moving defendants are agents or members of that association. The officers of the International and also the defendants would compel the employees of the Company to affiliate with the International and would compel then recognition of the International by the Company. To accomplish these results against the will both of the Company and its employees the officers of the International and the moving defendants have declared and now are engaged in waging war against the Company. They have gathered a fund of a quarter of a million dollars to finance that war and already they have begun the struggle. Unless the white flag is run up they propose to destroy the Company's business. To that end they have circulated false reports concerning the Company, have threatened the Company's customers so as to induce them to discontinue buying the Company's products, and have threatened to organize gangs of lawless men, who will prevent by intimidation and force the operation of the Company's factory.

Such is the controversy between the Company and its employees on the one side and defendants on the other. The Company has appealed to the law of the land through this court of equity. Answering that appeal, it is asserted by defendants that, although a court of equity once had the power to protect the owner of a business in such a situation as that described, no longer does it have that power; Congress has taken that power away, for this is a "labor dispute"; in a "labor dispute" a court of equity, practically speaking, is powerless; in such a controversy Congress has done its utmost to render impotent the nation's courts.

1. Whether the controversy here is a "labor dispute" within the meaning of that phrase as used in the Norris-LaGuardia Act, 47 Stat. 70 et seq., title 29, U.S.C. § 101 et seq. (29 U.S.C.A. § 101 et seq.), undoubtedly is the prime question presented. When it has been shown to be a "labor dispute," defendants' contention may not have been indisputably established, but certainly it will have been far advanced.

The provisions of the Norris-LaGuardia Act which chiefly concern us are these:

Section 1 (title 29, U.S.C. § 101 [29 U.S.C.A. § 101]). "No court of the United States * * * shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter."

Section 4 (title 29, U.S.C. § 104 [29 U.S.C.A. § 104]). "No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts."

Section 7 (title 29, U.S.C. § 107 [29 U.S.C.A. § 107]). "No court of the United States shall have jurisdiction to issue a

temporary or permanent injunction in any case involving or growing out of a labor dispute, as herein defined, except after hearing the testimony of witnesses in open court * * * and except after findings of fact by the court, to the effect—"

Section 13 (title 29, U.S.C. § 113 [29 U.S.C.A. § 113]). "When used in this chapter, and for the purposes of this chapter—

"(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers; and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined).

"(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

That what ordinarily would be understood by the phrase "labor dispute" greatly is enlarged by the statutory definition in section 13 (29 U.S.C.A. § 113) at least seems apparent. Except for that definition, no one would conceive there is a "labor dispute" when employer and employees in a given business enterprise are in perfect accord, with no disagreement between them, merely because outsiders, some of whom may be engaged in the same kind of production, conspire to destroy the given enterprise. Certainly, as generally understood, a labor dispute is a dispute between an employer and his employees about wages or hours or working conditions or who shall speak for the employees, a dispute about that which is a possible subject of dispute between employers and employed, between those who alone could be concerned directly in such a controversy. Except for the statutory definition, no one would think of a controversy between A and B, competing owners of factories, as to what wages A should pay his employees, as a "labor dispute," so that, if B hires outlaws to dynamite A's factory unless he raises wages, A cannot have an injunction from a court of equity. Except for the definition, no one would think of a dispute between A and a group of unemployed demanding that he employ them, although he does not need them, as a labor dispute, so that they could not be enjoined from trespassing on A's property. But the statutory definition does appear to enlarge the natural meaning of the phrase.

There is such a mass of confusing verbiage in section 13 of the Norris-LaGuardia Act (29 U.S.C.A. § 113), purporting to define terms, that it is only possible to hope to arrive at the meaning intended[1] if the act is broken up and separated into its several elements as we now attempt to do. We have:

"A case shall be held to involve or to grow out of a 'labor dispute'—

---

[1] Consideration of the involved character of section 13 suggests that the real draftsman of the act may have intended to confuse even its nominal authors, to camouflage even from them, and, of course, also from members of the House and Senate generally, the full amplification which was being given to the meaning of the phrase "labor dispute." Certainly neither in the report of the Senate Judiciary Committee, presented by Senator Norris, nor in the report of the House Judiciary Committee, presented by Representative LaGuardia, is any full explanation of section 13 given.

"1. When the case involves persons who are interested in the same industry, trade, craft or occupation.

"2. Or (when the case involves persons who) have direct or indirect interests therein (i. e., in the same industry, trade, craft or occupation).

"3. Or (when the case involves persons) who are employees of the same employer.

"4. Or (when the case involves persons) who are members of the same or an affiliated organization of employers or employees—

"Whether such dispute (i. e. 1, 2, 3 or 4) is

"1. Between one or more employers or associations of employers and one or more employees or associations of employees.

"2. Between one or more employers or associations of employers and one or more employers or associations of employers.

"3. Between one or more employees or associations of employees and one or more employees or associations of employees.

"4. Or when the case involves any conflicting or competing interest in a 'labor dispute' (as hereinafter defined—i. e. in subdivision (c)) of 'persons participating or interested' therein (as hereinafter defined)."

"A person or association shall be held to be a person participating or interested in a labor dispute—

"1. if relief is sought against him or it and if he or it is engaged in the same industry, trade, craft or occupation in which such dispute occurs;

"2. (if relief is sought against him or it, and if he or it) has a direct or indirect interest therein (i. e. in the same industry, trade, craft or occupation in which such dispute occurs) ;

"3. (if relief is sought against him or it and he or it) is a member, officer or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft or occupation."

The term "labor dispute" includes any controversy

"(1) concerning terms or conditions of employment

"(2) or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment

"Whether * * * the disputants stand in the proximate relation of employer and employee."

■ Studying section 13 when it has thus been broken up, we are led to these conclusions: (1) Certain declarations in section 13(a) cannot be taken literally since so taken they are nonsensical; (2) when section 13 is reasonably interpreted, it clearly indicates an expansion of the meaning of the phrase "labor dispute," beyond its normal and usual significance.

We have said that certain declarations in section 13(a) cannot be taken literally. To illustrate: Section 13(a) declares that "a case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation." But A and B, both manufacturers of ladies' garments, may have a controversy with each other over a contract involving the sale and purchase of real estate. Here is a case which "involves persons who are interested in the same industry." It would be nonsense to say that that controversy involves or grows out of a "labor dispute." Again, section 13(a) declares that "a case shall be held to involve or to grow out of a labor dispute" when it involves persons "who are employees of the same employer." A and B are employees in the same factory. They also are adjoining lot owners. There is a controversy between them touching the line fence. It would be absurd to say that that controversy is a "labor dispute," although it is "a case involving persons who are employees of the same employer."

■■ If any intelligent meaning is to be gathered from section 13, it is necessary that the several provisions of the section shall be read together, although grammatically its parts are independent. When the several provisions of the section are read together, it is clear that the definition of "labor dispute" given in subdivision (c) must be read into subdivisions (a) and (b). There cannot then be a "labor dispute" unless there is a controversy between the disputants either "concerning terms or conditions of employment" or concerning the "association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment." But that is what normally would be meant by the phrase "labor dispute," with the further element

that the controversy is restricted to a controversy between those in the employer-employee relationship. Section 13 enlarges the normal meaning of the phrase by declaring that a "labor dispute" may exist even although there is no employer-employee relationship between the disputants. It is still a "labor dispute" if the dispute concerns one or the other of the two matters just referred to, even although the disputants are not in the employer-employee relationship.

It is entirely impossible to reconcile the conception that a "labor dispute" is restricted to a dispute between those in the employer-employee relationship with the language of section 13. That section says in so many words that it is not necessary that "the disputants stand in the proximate relation of employer and employee." Moreover, the section sets out, in subdivision (a), specific examples of labor disputes in which the employer-employee relationship could not possibly be present, as, e. g., a case between one employer and another employer, as, again, a case between one employee and another employee. Such cases, specifically described in section 13(a) as "labor disputes," do not and could not involve the employer-employee relationship.

The broad interpretation of the phrase "labor dispute" just suggested is required by the very language of section 13. If there were any doubt about it, that doubt would be removed by a consideration of the report of the Judiciary Committee of the House of Representatives submitting the bill which became the act. In that report it is said that: "Section 13 contains definitions which speak for themselves. It is hardly necessary to discuss them other than to say that these definitions include, as hereinabove stated, a definition of a person participating in a labor dispute which is broad enough to include others than the immediate disputants and thereby corrects the law as announced in the case of Duplex Printing Press Co. v. Deering, supra, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196, wherein the Supreme Court

reversed the Circuit Court of Appeals, 252 F. 722, and held that the inhibition of section 20 to the Clayton Act [29 U.S.C.A. § 52] only related to those occupying the position of employer or employee and no others."

This reference to section 13 and to the case of Duplex Printing Press Company v. Deering is to be read in connection with the following earlier language in the report: "In the case of Duplex Printing Press Co. v. Deering, 254 U.S. 443, 41 S. Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196, decided January 3, 1921, and being a six to three decision, the court held so far as pertinent to this particular discussion that this section of the Clayton Act (29 U.S.C. A. § 52) provided a restriction upon the use of the injunctions in favor only of the immediate disputants and that other members of the union not standing in the proximate relation of employer and employee could be enjoined. Of course, it is fundamental that a strike is generally an idle gesture if confined only to the immediate disputants. This is intended to be remedied by the later provisions in this act defining the meaning of the term 'person participating in a labor dispute,' as to whom, as in the bill defined, the courts are deprived of jurisdiction to issue injunctions in the specified instances set forth in this section."

This report of the Judiciary Committee of the House[2] makes it perfectly clear, as does the very language of the act, that it was intended to include within the meaning of the phrase "labor dispute" controversies concerning terms and conditions of employment and the representation of persons negotiating and arranging such terms between others than those in the employer-employee relationship.[3]

But, however broad an interpretation the language and history of section 13 justify and require, it is essential that a controversy to be a "labor dispute" shall concern either terms or conditions of employment or the representation of persons in negotiating terms or conditions of employment. A controversy concerning matters

---

[2] The report of the Judiciary Committee of the Senate does not throw light on the meaning of section 13.

[3] We agree entirely with the views expressed in this regard by our colleague, Judge Collet, in the excellent opinion written by him in Grace Corporation v. Williams et al. (D.C.) 20 F.Supp. 263,

filed July 6, 1937. We agree further with Judge Collet that those opinions which reach a contrary conclusion are not well reasoned. They seem to us to ignore the very words and the obvious import and purpose of section 13 of the Act.

which do not involve that element cannot possibly be a "labor dispute." So a demand by X, who manufactures ladies' garments in competition with Y, that Y raise the wages of its employees so that it cannot undersell X undoubtedly is a "labor dispute" within the meaning of section 13, although not within the normally accepted meaning of the phrase. But a demand by X that Y purchase X's factory in no sense is a "labor dispute" because it does not concern at all either terms or conditions of employment or any related matter. Just so a demand of the Donnelly Company by the International that higher wages be paid to the employees of the Donnelly Company may be a "labor dispute" within the meaning of section 13. But a demand by the International that the Donnelly Company compel its employees to join the International is not a "labor dispute." The objective of such a demand may have nothing to do with wages or conditions of employment or the representation of persons in negotiating concerning such matters. As the bill here alleges, the objective may be only increased dues for the International's treasury and greater power and higher salaries for its officers.

The controversy between the plaintiff and the defendants as that controversy is described in the bill certainly is not a "labor dispute" for that the element of a disagreement touching terms or conditions of employment or the representation of persons negotiating about terms or conditions of employment does not appear. The only controversy between plaintiff and defendants which the bill describes is the refusal of plaintiff to comply with the demands of defendants that the plaintiff recognize the defendant union and compel its employees to affiliate therewith. It does not appear from the bill that there is any quarrel between the defendants and the plaintiff touching those matters which must be involved in a "labor dispute."

It is true that the bill alleges that the defendants, to carry out their conspiracy to compel the plaintiff to recognize the union and to force its employees to join the union, have falsely represented and published that the plaintiff pays inadequate compensation to its employees and subjects them to unhealthful working conditions. Learned counsel for defendants seize upon these incidental and secondary allegations and urge that they indicate the presence of a controversy concerning terms and condi-

tions of employment. We cannot agree that they have such significance. If X, a competitor of the Donnelly Company, demands that the Donnelly Company purchase X's factory, that is not a "labor dispute," as we have seen, since it in no way concerns terms and conditions of employment or any related matter. It cannot be metamorphosed into a "labor dispute" by X if only X begins a campaign of slander against the Company, charging that it underpays its employees and subjects them to unhealthful conditions of employment, all for the purpose of coercing the Company to yield to the demand of X. If the defendants should demand payment into the treasury of the International of a sum of $100,000 and the Donnelly Company should refuse that demand, there would be a controversy between the parties. That controversy would not be a "labor dispute." It would scarcely be argued that that controversy would be converted into a "labor dispute" if the defendants should seek to enforce the demand by a threat of or by actual slander touching wages, etc., in plaintiff's factory. A "labor dispute" must be a dispute about those matters which are vital to the welfare of laboring men, such as wages, conditions of employment, etc., and in which one of the disputants demands something by way of improvement of wages and conditions and the other disputant refuses the demand.

It follows from what we have thus far said that, even with the very broad interpretation of the phrase "labor dispute" which section 13 of the act requires, we do not have here upon the present record a "labor dispute." The bill then should not be dismissed nor should the restraining order which has been issued be dissolved.

It should be pointed out distinctly that the victory which plaintiffs now win as against those of the defendants who have moved to dismiss the bill and to dissolve the restraining order well may turn out to have been scarcely worth the winning. It may well turn out hereafter that the true nature of the controversy between plaintiffs and defendants is not depicted by the bill. If it does appear hereafter that the controversy truly is a "labor dispute," at that moment the bill will be dismissed and the restraining order dissolved, for it is conceded that the conditions precedent to equitable relief, if there is a "labor dispute," have not been satisfied. Whether the controversy is or is not a "labor dis-

pute" will not depend upon any mere pleading of conclusions, that it is, or is not. What were the facts when the bill was filed? That is the question. What were the facts determining the true nature of the controversy? What demands of plaintiffs were defendants making? When that question is answered, we will know whether the controversy between these disputants when the bill was filed really was a "labor dispute."

2. There remains to be considered the earnest contention of plaintiffs' learned counsel that, even if it be conceded that, as we have ruled, the Norris-LaGuardia Act does not restrict a "labor dispute" to controversies between those occupying an employer-employee relationship, still the definition of the phrase in that act in effect was modified by the later National Labor Relations Act (29 U.S.C.A. §§ 151–166) so as again to restrict its application to such controversies.

The contention seems to us untenable. The phrase is again defined in the later act and defined in language substantially identical with that used in the earlier act. It is again expressly declared that the employer-employee relationship is not essential to the existence of a "labor dispute." By what process of reasoning is it sought to circumvent this express declaration?

The reasoning of counsel is thus formulated:

" * * * this later definition must be read in connection with section 9(a) of the same Act [29 U.S.C.A. § 159(a)]. Section 159(a) provides that representatives selected by the majority of the employees shall be the exclusive representatives of all the employees in the unit for the purpose of collective bargaining in respect to rates of pay, wages, hours, etc.—which section has been construed by the Supreme Court of the United States to mean that the employer is required to deal with such representatives and with them alone.

"When by the Wagner Act Congress provided that negotiation of terms and conditions of employment can only take place between an employer and the representatives of a majority of the employees, necessarily the definition of 'labor dispute,' theretofore existing under the Norris-LaGuardia Act, was restricted. It would be a contradiction in terms and a palpable absurdity to say that following the passage of the Wagner Act Congress intended to say that a 'labor dispute' could exist between an employer and a labor union with whom the employer is forbidden to deal. This simply would not make sense."

With the greatest possible respect for learned counsel we find ourselves unable to perceive any force in this argument. We see no connection between the requirement of the National Labor Relations Act (29 U.S.C.A. §§ 151–166), that in certain cases an employer must deal exclusively with the representatives of the majority of his employees, and the definition of what is a "labor dispute" in the Norris-LaGuardia Act (29 U.S.C.A. § 101 et seq.), repeated in the National Labor Relations Act.

If a controversy with outsiders which was a "labor dispute" before the adoption of the National Labor Relations Act ceased to be a "labor dispute" upon the adoption of that act, because thereafter the employer must bargain only with representatives of the majority of his employees, then, for the same reason, an employer and a minority of his employees could not have a "labor dispute" following the adoption of the act. Suppose, for example, in a given factory, 49 per cent. of the employees unite and demand higher wages and threaten to and do strike because the demand is refused. They picket the factory and compel a shutdown. Would it be argued that that was not a "labor dispute," because the employer is required to bargain only with the representatives of the majority and impliedly is forbidden to bargain with the representatives of the 49 per cent.? Why would that not be argued? Because the fact of the dispute is so obvious as to make ridiculous the theory that it cannot exist. Because, again, the fact of the existence or nonexistence of a dispute cannot possibly depend upon the right or wrong of the dispute, nor upon the right of one of the disputants to compel compliance by the other with his demands.

We think there is another answer to the argument. The theory that the National Labor Relations Act (29 U.S.C.A. §§ 151–166) forbids an employer treating with any other than the representatives of the majority of his employees concerning, for example, working conditions in his factory or hours of labor or wages, is not supported by provisions of the act. The act provides only that: "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a

unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment." 29 U.S.C.A. § 159(a).

That says and means only that the employer shall not bargain with other representatives of the employees. But can he not deal with another employer touching, for example, the matter of holidays? May he not discuss the matter of hours and wages and working conditions with the Secretary of Labor, with the Governor, with the Mayor, with the Bishop of the Diocese? If he agrees with one of these dignitaries (or with the president of the American Federation of Labor or the president of the International Ladies' Garment Workers' Union) that he will increase his wages 10 per cent. or grant a half holiday every Wednesday afternoon, has he done that which is forbidden by law? The answer must be negative. But that negative answer destroys the heart of the argument, that because an employer cannot deal with a labor union to which none of his employees belong, therefore there cannot be a "labor dispute" between that employer and that union.

3. We have not overlooked other questions presented but think it is unnecessary to discuss them. As for the contention that there is a misjoinder of causes of action, it has become moot with our order striking certain amendments from the bill.