**DONNELLY GARMENT CO. et al., v. IN-TERNATIONAL LADIES' GARMENT WORKERS' UNION et al.***

**DONNELLY GARMENT WORKERS' UN-ION et al. v. SAME.**

**Nos. 11286, 11287.**

Circuit Court of Appeals, Eighth Circuit.

Oct. 28, 1938.

. THOMAS, Circuit Judge, dissenting.

———◇———

James A. Reed and William S. Hogsett, both of Kansas City, Mo. (Robert J. Ingraham, of Kansas City, Mo., on the brief), for appellants Donnelly Garment Co. and Donnelly Garment Sales Co.

Frank E. Tyler, of Kansas City, Mo. (Alfred N. Gossett, of Kansas City, Mo., on the brief), for appellants Donnelly Garment Workers' Union and others.

Frank P. Walsh and Roy W. Rucker, both of Kansas City, Mo. (Clif Langsdale and Jerome Walsh, both of Kansas City, Mo., on the brief), for appellees.

Before SANBORN, THOMAS, and BOOTH, Circuit Judges.

SANBORN, Circuit Judge.

These appeals are from a decree dismissing the complaint of the appellants Donnelly Garment Company and Donnelly Garment Sales Company and the complaint in intervention of the appellants Donnelly Garment Workers' Union et al. The Donnelly Garment Company and the Donnelly Garment Sales Company are Missouri corporations with offices and a factory in Kansas City. These companies manufacture and sell women's garments and do a nationwide business. The Donnelly Garment Workers' Union is an unincorporated association composed of all of the employees of these companies below the rank of supervisor. The appellee International Ladies' Garment Workers' Union is an international unincorporated association with a membership of some 250,000 persons who are employed in the women's garment industry. The other appellees are officers and agents of that union.

The suit out of which these appeals arise are brought on July 5, 1937, by appellants Donnelly Garment Company and Donnelly Garment Sales Company (hereafter referred to as plaintiffs) to restrain the appellees International Ladies' Garment Workers' Union, its officers and agents (hereafter referred to as defendants), from doing certain acts (picketing, boycotting and otherwise interfering with plaintiffs' business, employees and customers) alleged to be in furtherance of a conspiracy violative of the Sherman Anti-Trust Act and the Clayton Act, 15 U.S.C. ch. 1, § 1 et seq., 15 U.S.C.A. § 1 et seq. The appellants Donnelly Garment Workers' Union and its representatives (hereafter referred to as interveners) were allowed to intervene and to file a complaint in intervention asking for similar relief against the defendants, as well as an injunction to restrain the plaintiffs from recognizing the defendant union as the representative of plaintiffs' employees for the purposes of collective bargaining. The complaint in intervention alleged that the defendants were not engaged in a labor dispute within the meaning of the Act of Congress of March 23, 1932, c. 90, 47 Stat. 70, 29 U.S.C., §§ 101–115, 29 U.S.C.A. §§ 101–115, known as the Norris-LaGuardia Act, nor within the meaning of the Act of Congress of July 5, 1935, c. 372, 49 Stat. 449, 29 U.S.C., §§ 151–166, 29 U.S.C.A. §§ 151–166, known as the National Labor Relations Act, and that no labor dispute was involved in the litigation, and that "if the actions and course of conduct of the defendants" were construed to be a "labor dispute" within the meaning of those statutes, the latter would be unconstitutional, as so interpreted, because in contravention of the Constitution of the United States. By amendment to their complaint, the plaintiffs incorporated similar allegations as to the inapplicability of the Norris-LaGuardia Act and its invalidity if so construed as to apply to this suit.

A temporary restraining order enjoining the defendants from committing the acts complained of was entered. A motion to dismiss the complaint and dissolve the restraining order was made by the defendants and was denied by the court on August 13, 1937. D.C., 20 F.Supp. 767. After the passage of the Act of August 24, 1937, c. 754, 50 Stat. 751, 28 U.S.C.A. §§ 17 and note, 349a, 380a and note, the District Judge having the case in charge certified to the Attorney General that the constitutionality of the Norris-LaGuardia Act and of the National Labor Relations Act had been drawn in question. At the request of the District Judge, a court of three judges was constituted to hear the motion of the defendants to dismiss the complaint and to dissolve the restraining order, and the motion of the plaintiffs and interveners for an interlocutory injunction restraining the defendants from committing the alleged unlawful acts complained of. The motion to dismiss was denied by that court, and the interlocutory injunction was granted. D.C., 21 F.Supp. 807. A majority of the three judges constituting the court held that the Norris-LaGuardia Act was inapplicable.

An appeal was then taken directly to the Supreme Court of the United States, which vacated the decree and remanded the cause for further proceedings, on the ground that the suit was not one to restrain the enforcement of any act of Congress and should not have been heard by a three-judge court under the Act of August 24, 1937, nor appealed directly to the Supreme Court. International Ladies' Garment Workers' Union et al. v. Donnelly Garment Co. et al., 304 U.S. 243, 58 S. Ct. 875, 82 L.Ed. 1316.

The plaintiffs and the interveners thereupon amended their complaints in order to bring themselves within the procedural

requirements of the Norris-LaGuardia Act, although still asserting its inapplicability. The defendants then moved to dismiss the plaintiffs' and the interveners' amended complaints. These motions were heard by the court below and sustained. D.C., 23 F. Supp. 998. That court was of the opinion that the suit involved or grew out of a "labor dispute" as defined in the Norris-LaGuardia Act, that that Act was therefore applicable, and that the complaints did not state a case which would permit the granting of injunctive relief. The plaintiffs and the interveners have each appealed from the decree dismissing the complaints. The appeals were consolidated and heard together upon a single record.

The questions for decision are these:

(1) Does this suit involve or grow out of a "labor dispute" as defined by the Norris-LaGuardia Act?

(2) If the suit does involve or grow out of such a "labor dispute", is the case stated in the challenged pleadings one in which the trial court, under the restrictions of the Norris-LaGuardia Act, might grant injunctive relief?

As is usual in the case of demurrers and motions to dismiss pleadings, the parties are not in accord as to what facts are "well pleaded". We think it would serve no useful purpose to attempt to sift the complaints, which cover some 40 pages of the record, in an endeavor to separate facts, evidentiary and ultimate, from the mere conclusions of the pleaders. We are of the opinion that if, in view of what is alleged, it can reasonably be conceived that the plaintiffs and the interveners could, upon a trial, establish a case which would entitle them to injunctive relief, the motion to dismiss should not have been granted.

In Winget v. Rockwood, 8 Cir., 69 F. 2d 326, 329, this Court said:

"A suit should not ordinarily be disposed of on such a motion [a motion to dismiss the bill for want of equity] unless it clearly appears from the allegations of the bill that it must ultimately, upon final hearing, be dismissed. To warrant such dismissal, it should appear from the allegations that a cause of action does not exist, rather than that a cause of action has been defectively stated. * * *

"That rule of procedure should be followed which will be most likely to result in justice between the parties, and, generally speaking, that result is more likely to be attained by leaving the merits of the cause to be disposed of after answer and the submission of proof, than by attempting to deal with the merits on motion to dismiss the bill."

See, also, Thompson v. Terminal Shares, Inc., 8 Cir., 89 F.2d 652, 657; Ansehl v. Puritan Pharmaceutical Co., 8 Cir., 61 F. 2d 131, 133; Kansas v. Colorado, 185 U. S. 125, 145, 22 S.Ct. 552, 46 L.Ed. 838.

Stated briefly and generally, the charge which the plaintiffs and the interveners make against the defendants is that they are engaged in an unlawful conspiracy to force the plaintiffs' employees, against their will, to join the defendant union and to force the plaintiffs to compel their employees to join that union; that this conspiracy is a part of a larger conspiracy to unlawfully force all persons engaged in the women's garment industry to compel their employees to join the defendant union, so that that union can control the employment of all labor in, and the operations of, that industry and can extort from the workers in the industry large sums of money by way of dues, fines, etc.; that, to carry out the conspiracy, it is the purpose of the defendants to injure and destroy the interstate trade and commerce of persons engaged in the industry until such persons are forced to yield to defendants' demands and to compel their employees to join the defendant union, thereby destroying the rights of such employees to deal with their employers through representatives chosen by such employees; that, in furtherance of this conspiracy, the defendants have caused lawless gangs to assault the employees of persons under attack and to threaten such employees and their families with bodily harm if they continued to work for their employer and continued to refuse to join the defendant union, and that the defendants have, by threats and violence, prevented such employees from working; that, in furtherance of this conspiracy, the defendants have published false and libelous reports about the plaintiff companies and the working conditions in their plant, have taken steps to inaugurate secondary boycotts against their customers and their merchandise in various states, and have threatened to perpetrate against the plaintiffs the same fraudulent, violent and unlawful acts, described in the complaints, which were perpetrated by the defendants against several other

garment companies in Kansas City upon which the defendants have worked or sought to work their will; that the plaintiffs and their employees have had no controversies over terms or conditions of employment or over employee representation; that none of the plaintiffs' employees, at any times which are here material, was a member of the defendant union; that on March 2, 1937, shortly after the defendants had publicly announced their intention of unionizing the plaintiffs' employees, the plaintiffs were notified by their employees that they refused to acknowledge or accept the defendant union as their representative for the purpose of collective bargaining; that on March 9, 1937, the plaintiffs received from the Kansas City Joint Board of the defendant union a letter containing a statement of alleged grievances, and inviting the plaintiffs to confer with the defendant union with respect thereto; that the statements contained in the letter were utterly false; that the grievances alleged did not exist; that the letter was a mere pretense and was written for the purpose of making it appear that the defendant union was engaged in a "labor dispute" as defined in the Norris-LaGuardia Act, 29 U.S.C.A. § 113(c), and for the purpose of securing the protection of that Act for the defendant union, and for the purpose of

furnishing a means of injuring and destroying the plaintiffs' interstate business through the circulation of the false statements contained in the letter; that thereafter all of the plaintiffs' employees, voluntarily and without suggestion or coercion by the plaintiffs, formed their own union, selected their own representatives for collective bargaining, and entered into a contract with the plaintiffs covering all terms and conditions of employment and of employee representation, which contract is a valid contract and is now in full force and effect; and that the terms and conditions of employment which their employees have secured from the plaintiffs are more favorable than the terms and conditions of employment which the defendant union has been able anywhere to obtain for its members.

As already pointed out, while the plaintiffs and the interveners still contend that this suit is not one affected by the Norris-LaGuardia Act, they have incorporated in their complaints the allegations required by Section 7 of that Act, § 107, Tit. 29, U.S.C., 29 U.S.C.A. § 107. To meet the requirements of Section 8 of the Act (§ 108, Tit. 29, U.S.C., 29 U.S.C.A. § 108) [1], they incorporated in their complaints the allegations set forth in full in the margin.[2] It should, perhaps, be said that the complaint

[1] "No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration."

[2] "On March 2, 1937, eleven hundred eighty-three of plaintiffs' employees (being all but three of the then employees) in a writing delivered to plaintiffs refused to acknowledge or accept the defendant Union as their representative. On or about April 27, 1937, one hundred per cent of plaintiffs' employees in the manner and form and for the purposes hereinabove set forth formed the Donnelly Garment Workers' Union, and unanimously designated and selected the nine members of the Executive Committee of said Union as their representatives for the purposes of collective bargaining with plaintiffs in respect to rates of pay, wages, hours of employment and other conditions of employment; and on May 27, 1937, after negotiations between plaintiffs and said representatives, a writ-

ten contract was made and entered into between plaintiffs and the Donnelly Garment Workers' Union (supplemented thereafter on June 22, 1937 by a supplemental contract between the same parties) providing for wages, rates of pay, hours of employment and all other conditions of employment. Said contracts also provided that plaintiffs were bound to and did recognize the Donnelly Garment Workers' Union as the sole bargaining agency on behalf of all of their said employees. Said contracts were made in good faith, were satisfactory to all parties thereto, and the same have been at all times since and are now in full force and effect. By the aforesaid negotiations and contracts all matters of agreement between plaintiffs and their employees concerning terms and conditions of employment, and concerning the association and representation of plaintiffs' employees in negotiating, fixing, maintaining, changing and seeking to arrange terms and conditions of employment, were fully fixed, established, settled and determined; and at all times since the making of said contracts there has been no controversy or dispute of any kind between plaintiffs and any of their

in intervention of the Donnelly Garment Workers' Union and its representatives is in complete harmony with the case made and the relief prayed for in the plaintiffs' complaint. The interveners seek to protect their union and its members not only from the coercion of the defendants but also from any coercion by the plaintiffs.

At the time this suit came on for hearing before the three-judge court upon the application of the plaintiffs for a temporary injunction and the motion of the defendants to dismiss the bill, the question whether the suit involved or grew out of a "labor dispute" was a debatable question, and the majority of that court were of the opinion that the Norris-LaGuardia Act was inapplicable. D.C., Dec. 31, 1937, 21 F.Supp. 807. After the decision of the three-judge court, the Supreme Court filed opinions in Lauf v. E. G. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872, decided February 28, 1938, a case much like this one, and in New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 58 S. Ct. 703, 82 L.Ed. 1012, decided March 28, 1938, a suit to enjoin a corporation composed of colored persons from picketing stores of the Sanitary Grocery Company and committing acts injurious to its business. In each of these cases the Supreme Court held that the suit involved or grew out of a "labor dispute" as defined in the Norris-LaGuardia Act, and that that Act was applicable. Thereafter, in Grace Company v. Williams, 8 Cir., April 22, 1938, 96 F.2d 478, this Court, upon the authority of Lauf v. E. G. Shinner & Co., supra, and New Negro Alliance v. Sanitary Grocery Co., supra, held that the Norris-LaGuardia Act applied to a suit brought to enjoin acts of violence interfering with the Grace Company's business and committed for the very purpose of forcing its employees—who had formed a union of their own and had bargained collectively with the plaintiff—into joining the United Garment Workers of America, Local Union No. 47, against their will. This Court said (page 480 of 96 F.2d):

"It has been the contention of plaintiff that the Norris-LaGuardia Act was not applicable because there was no labor dispute involved. Subdivision (c) of section 13 of the act, 29 U.S.C.A. § 113(c), provides that: 'The term "labor dispute" in-

---

employees concerning any of those matters. By reason of all of the foregoing facts the plaintiffs, at all times since the aforesaid organization of the Donnelly Garment Workers' Union and the designation and selection of the employees' aforesaid bargaining representatives and the making of said contracts, have been and now are precluded and prohibited by the National Labor Relations Act (29 U.S.Code, Secs. 151–166 [29 U.S.C.A. §§ 151–166]) from negotiating, mediating or arbitrating with or through anyone other than the employees' exclusive representatives so designated and selected. At all said times any effort by plaintiffs to settle any dispute with or demand by defendants, through negotiation, arbitration, or with the aid of any governmental machinery of mediation, in the circumstances hereinabove alleged, would have been a violation of the aforesaid provisions of their contracts with their employees, and would have been unlawful because prohibited by the National Labor Relations Act, and would have been unreasonable; and was, therefore, not required as a condition precedent to plaintiffs' right to the injunctive relief prayed herein. After the aforesaid negotiations and the making of the aforesaid contracts with their own employees, and before the time this suit was begun, plaintiffs definitely determined that they could never attempt to compel or influence any of their employees against their will and free choice to become members of or be represented by the defendant union, and could never negotiate, mediate or arbitrate any demand by defendants for the abrogation of plaintiffs' contracts with their employees or for the nullification of their employees' rights of self-organization and collective bargaining through representatives of their own choosing. Because of all the facts aforesaid, any settlement between plaintiffs and defendants of any alleged controversy or alleged dispute between plaintiffs and defendants, or of any demand by defendants upon plaintiffs, was at all the times aforesaid utterly impossible; and any attempt at such a settlement, either by negotiation or with the aid of any available governmental machinery of mediation or by voluntary arbitration, would have been and was at all said times entirely and obviously useless and unreasonable; and was, therefore, not required as a condition precedent to plaintiffs' right to the injunctive relief prayed herein. For all of these reasons plaintiffs have not failed 'to make every reasonable effort' to settle any dispute with defendants either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration."

cludes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.'

"In view of the opinions in Lauf et al. v. E. G. Shinner & Co., Inc., [303 U.S. 323], 58 S.Ct. 578, 582, 82 L.Ed. 872, filed February 28, 1938, and in New Negro Alliance et al. v. Sanitary Grocery Co., Inc., [303 U.S. 552], 58 S.Ct. 703, 82 L.Ed. 1012, filed March 28, 1938, any discussion of this question under the facts as disclosed by the complaint would be more or less academic. On the authority of these decisions we are of the opinion that a labor dispute was involved in this suit."

■ The plaintiffs and the interveners earnestly and sincerely argue that the suit with which we are concerned is not ruled by Lauf v. E. G. Shinner & Co., supra, New Negro Alliance v. Sanitary Grocery Co., supra, or Grace Company v. Williams, supra, and that each of those cases may be distinguished.

We are convinced that, under the construction placed by the Supreme Court upon the language of the Norris-LaGuardia Act defining a "labor dispute", it must be held that this suit involves or grows out of such a dispute.[3] In view of our inability to distinguish in controlling particulars, this suit from Lauf v. E. G. Shinner & Co., supra, New Negro Alliance v. Sanitary Grocery Co., supra, and Grace Company v. Williams, supra, we shall not attempt to answer the various arguments made by the plaintiffs and the interveners in their endeavor to show the inapplicability of the Norris-LaGuardia Act. In passing, we direct attention to the fact that in Lauf v. E. G. Shinner & Co., supra, the Supreme Court, in speaking of the limitations upon jurisdiction contained in Section 7 of the Act (§ 107, 29 U.S.C., 29 U.S.C.A. § 107), said (page 330 of 303 U.S., page 582 of 58 S.Ct.): "There can be no question of the power of Congress thus to define and

limit the jurisdiction of the inferior courts of the United States," citing Kline v. Burke Construction Co., 260 U.S. 226, 233, 234, 43 S.Ct. 79, 82, 67 L.Ed. 226, 24 A. L.R. 1077; and that in New Negro Alliance v. Sanitary Grocery Co., supra, the Court said, relative to the definition of a labor dispute in the Norris-LaGuardia Act (page 561 of 303 U.S., page 707 of 58 S. Ct.): "The act does not concern itself with the background or the motives of the dispute."

■ It also seems clear to us that the only jurisdiction conferred by the National Labor Relations Act upon federal courts is that conferred upon the Circuit Courts of Appeals with respect to enforcing, modifying and setting aside orders of the National Labor Relations Board, as provided in § 160(e) and (f) of Title 29, U.S.C., 29 U.S.C.A. § 160(e, f). It is to be noted that § 160(h), 29 U.S.C.A. § 160(h), provides: "When granting appropriate temporary relief or a restraining order, or making and entering a decree enforcing, modifying, and enforcing as so modified or setting aside in whole or in part an order of the Board, as provided in this section, the jurisdiction of courts sitting in equity shall not be limited by sections 101 to 115 of this title [the Norris-LaGuardia Act]." The necessary inference is that in all other respects the effect of the Norris-LaGuardia Act upon the jurisdiction of "courts sitting in equity" was left unimpaired. Compare Blankenship v. Kurfman, 7 Cir., 96 F.2d 450; Lund v. Woodenware Workers Union, D.C., 19 F.Supp. 607; dissenting opinion of Judge Otis in Donnelly Garment Co. v. International Ladies' Garment Workers' Union, D.C., 21 F.Supp. 807, 830.

We think that the only doubtful question presented is whether it clearly and definitely appears from the allegations of the pleadings that if the plaintiffs and the interveners should prove the exact case which they have alleged in their pleadings, the court would be required to deny them any relief, because of the provision of Section 108, of 29 U.S.C., 29 U.S.C.A. § 108 (Sec. 8 of Norris-LaGuardia Act) that "no restraining order or injunctive re-

---

[3] See and compare Levering & Garrigues Co. v. Morrin, 2 Cir., 71 F.2d 284; Blankenship v. Kurfman, 7 Cir., 96 F. 2d 450; Cinderella Theater Co. v. Sign Writers' Local Union, D.C., 6 F.Supp. 164; Dean v. Mayo, D.C., 8 F.Supp. 73; Lund v. Woodenware Workers Union, D. C., 19 F.Supp. 607; dissenting opinion of Judge Otis in Donnelly Garment Co. v. International Ladies' Garment 'Workers' Union, D.C., 21 F.Supp. 807, 817–822.

lief shall be granted to any complainant * * * who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration."

In reliance upon this section, the defendants contend that the pleadings affirmatively show that no effort whatever was made by the plaintiffs to settle their dispute with the defendants by negotiation or otherwise; that therefore it conclusively appears that they failed to make any reasonable effort and that the court below is powerless to grant them injunctive relief.

The plaintiffs and the interveners assert that Section 108 does not require that the plaintiffs plead that they have not failed to make every reasonable effort to settle; that it relates to defensive matter available to the defendants; that, whether or not the plaintiffs were required to incorporate in their complaint allegations showing that they had not failed to make every reasonable effort to settle the dispute with the defendant union, the complaints clearly show that they did not fail, since it clearly appears from the facts pleaded that any effort on their part to settle the dispute would have violated the duty which they owed to their employees under the terms of the National Labor Relations Act, 29 U.S.C.A. §§ 151–166, and under their contract with their employees and would have been useless and unreasonable.

■ One weakness of the contention of the defendants arises from the fact that by their motion to dismiss they admit that the facts alleged in the complaint, descriptive of them, their conduct and intentions, are true. Because of this admission, we are required to view the case pleaded, in the aspect which is most favorable to the plaintiffs and most unfavorable to the defendants. From that viewpoint, the picture presented by the complaints is that of a group of "labor racketeers" attempting, by unlawful means, to compel the plaintiffs' employees, against their will and in violation of their rights, to join the defendant union, and to compel the plaintiffs, in order to prevent the destruction of their business, to force their employees to join the defendant union. The question then arises whether, under such admitted circumstances, Section 108, 29 U.S.C., 29 U.S.C.A. § 108—giving to that section a sensible construction—required any effort whatever on the part of the plaintiffs to settle the

dispute as a prerequisite to injunctive relief against unlawful acts of fraud and violence.

■ It is clear that Section 108 limits the jurisdiction of the federal courts. It prohibits the granting of any injunctive relief to a complainant who has failed to make every reasonable effort to settle the dispute out of which the case arises. We think it was necessary for the plaintiffs to allege facts sufficient to disclose a case calling for injunctive relief under the limitations and restrictions of the Norris-LaGuardia Act. In Grace Company v. Williams, supra, this Court said (page 481 of 96 F.2d):

"But in view of the limitations placed upon the jurisdiction of the federal courts to issue temporary restraining orders or permanent injunctions in a suit involving a labor dispute, it was incumbent upon plaintiff to disclose by affirmative allegations of its complaint that it was entitled to invoke the equitable jurisdiction of the court."

In that case we were dealing only with the requirements of Section 107, 29 U.S. C., 29 U.S.C.A. § 107, but the general rule above quoted, we think, is also applicable to Section 108, 29 U.S.C.A. See, also, Dean v. Mayo, D.C., 8 F.Supp. 73. We agree with the defendants that if it conclusively appears as a matter of law, from the allegations of the complaint, that the plaintiffs have failed to use every reasonable effort to settle their dispute with the defendants, then the court below was entirely justified in dismissing the suit. The difficulty which we encounter—when viewing the allegations of the pleadings in the light most favorable to the plaintiffs—is visualizing what reasonable effort the plaintiffs could or should have made to settle their controversy with the defendant union. As early as March 2, 1937—which was before any communication had been received by the plaintiffs from the defendant union—they had been notified of the refusal by their employees to recognize or accept the defendant union as their representative for collective bargaining. The National Labor Relations Act expressly imposed the duty upon the plaintiffs to bargain collectively only with the chosen representatives of their employees, and the implied duty not to bargain with any one else on their behalf. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 44, 57 S.Ct. 615,

627, 81 L.Ed. 893, 108 A.L.R. 1352. The Supreme Court has said that "collective action [on the part of employees in order to safeguard their proper interests] would be a mockery if representation were made futile by interference with freedom of choice." Page 34 of 301 U.S., page 622 of 57 S.Ct. It would seem that after receiving notice on March 2, 1937, of the refusal of their employees to accept the defendant union as their representative for purposes of collective bargaining, the plaintiffs could not reasonably have been expected to bargain collectively with that union with respect to either terms or conditions of employment or with respect to employee representation. After the plaintiffs had entered into contracts with the representatives chosen by their employees covering terms and conditions of employment and employee representation, it would seem unreasonable that the plaintiffs should be required to make any effort to settle a controversy with an outside union which was unlawfully and by means of fraud and violence—according to the allegations of the pleadings—attempting to coerce the plaintiffs' employees into joining that union. Accepting as true all of the allegations of the complaints, what effort on the part of the plaintiffs to settle the controversy with the defendant union would have been a reasonable effort, and what reasonable effort did the plaintiffs fail to make? Looking at the matter realistically, it would seem that at no time after the plaintiffs were notified by their employees of their refusal to accept the defendant union as a bargaining agent, was there anything which the plaintiffs could reasonably have offered to the defendants by way of compromise or settlement of the dispute which had arisen, except, perhaps, an explanation of the situation and a prayer for peace.

It is a well established rule that all laws are to be given a sensible construction, and that a literal application of a statute which would lead to absurd consequences should be avoided whenever a reasonable application can be given to the statute consistent with the legislative purpose, Hawaii v. Mankichi, 190 U.S. 197, 212, 23 S.Ct. 787, 47 L.Ed. 1016; United States v. Katz, 271 U.S. 354, 357, 46 S.Ct.

513, 514, 70 L.Ed. 986; that general terms in statutes should be so limited in their application as to give a sensible construction, avoiding injustice, oppression or absurdity, Church of the Holy Trinity v. United States, 143 U.S. 457, 461, 12 S.Ct. 511, 36 L.Ed. 226; and that the law ought not to be construed so as to require of a party a mere idle ceremony, Cox v. United States, 6 Pet. 172, 202, 8 L.Ed. 359.

It is our opinion that Section 108, 29 U.S.C., 29 U.S.C.A. § 108, does not disclose an intention on the part of Congress to deny to a complainant a right to injunctive relief against the unlawful acts of a defendant where the facts and circumstances alleged in a complaint are such as might justify a finding (if the case were heard upon its merits) that any effort on the part of the complainant to settle the dispute out of which the case arose would have been unreasonable.[4]

Our conclusion is that, while it appears from the allegations of the complaint that this suit is one which involves a "labor dispute" as defined by the Norris-LaGuardia Act, it should not have been disposed of upon the pleadings, and that the question whether the plaintiffs failed to use every reasonable effort to settle the dispute is a question of fact to be determined from the evidence adduced at a hearing or trial upon the merits.

The Court below did not err in modifying the temporary restraining order to meet the requirements of the Norris-LaGuardia Act.

The decree appealed from is reversed and the case remanded for further proceedings not inconsistent with this opinion.

THOMAS, Circuit Judge (dissenting).

I cannot agree with the conclusion of the majority, "that Section 108, 29 U.S.C., 29 U.S.C.A. § 108 does not disclose an intention on the part of Congress to deny to a complainant a right to injunctive relief against the unlawful acts of a defendant where the facts and circumstances alleged in a complaint are such as might justify a finding (if the case were heard upon its merits) that any effort on the part of the complainant to settle the dispute

---

[4] See dissenting opinion of Judge Otis in Donnelly Garment Co. v. International Ladies' Garment Workers' Union, D. C., 21 F.Supp. 807, 830; and compare opinion of Judge Collet in Grace Company v. Williams, D.C., 20 F.Supp. 263, 267, 270.

318

out of which the case arose would have been unreasonable."

Section 8 of the Norris-LaGuardia Act, 29 U.S.C.A. § 108, limits the jurisdiction of the court in cases involving labor disputes by denying to federal courts power to grant a restraining order or injunctive relief "to any complainant * * * who has failed to make every reasonable effort to settle such dispute", etc. This language is plain and unambiguous and leaves no room for interpretation. The power of the court to grant injunctive relief in the absence of some reasonable effort to settle is taken away without qualification, proviso or exception. No excuse whatever is provided for. In United States v. Missouri Pac. R. Co., 278 U.S. 269, 277, 49 S.Ct. 133, 136, 73 L.Ed. 322, Mr. Justice Butler, speaking for the Supreme Court, said: "It is elementary that, where no ambiguity exists, there is no room for construction. Inconvenience or hardships, if any, that result from following the statute as written, must be relieved by legislation. * * * Construction may not be substituted for legislation."

In the instant case it is alleged affirmatively that plaintiff made ho effort to settle the dispute at any time prior to the commencement of the suit for an injunction. In Grace Co. v. Williams, 8 Cir., 96 F.2d 478, this court declared that "it was incumbent upon plaintiff to disclose by affirmative allegations of its complaint that it was entitled to invoke the equitable jurisdiction of the court." [page 481.] I fail to understand how a complaint seeking injunctive relief in a case involving a labor dispute within the meaning of the Norris-LaGuardia Act can confer jurisdiction upon a federal court when it fails to allege that "every reasonable effort to settle" had been made, but on the other hand alleges that no effort to settle had been made. The majority opinion, it seems to me, holds that the pleading of facts which in the opinion of the court, if proven, make it unreasonable for a plaintiff to settle on account of a contract voluntarily entered into after the commencement of the dispute is somehow equivalent to an allegation that every reasonable effort to settle had been made. This seems to me to be an assumption of jurisdiction to determine a fact which the court has no power to determine. Such a result, in my opinion, not only amends but emasculates the statute.

I would affirm the judgment appealed from.